HD

**THE UNITEB STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF MARYLAND**

Rcv'd by: _____

**KORTUE C. SAMMY, SR**
**3652 Turbridge Drive**
**Burtonsville, MD 20866-2011**

    **Plaintiff**

                         **COMPLAINT TO REVOKE**       SAG 25CV0755
                          **NATURALIZATION**

    **Vs.**

**MARGARET WILLIAMS-SAMMY**
**14212Weeping Willow Drive # 11**
**Silver Spring 20906**

    **Defendant**

1

PLAINTIFF'S AFFIDAVIT AND PREAMBLE

During a Show Cause Hearing for contempt emanating from Judgment for Absolute Divorce on February 10, 2025, my ex-spouse through her legal counsel requested of the judge to order a judicial sale of my primary residence. While a legal marital property, my ex-spouse had no material financial involvement in the acquisition of this property.

From a moral stand point, I became eighty percent blind during the course of the marriage; three surgeries my ex-spouse does not know the name of any the three ophthalmologists that treated me.

In the harshest winter the DMV has experienced in fifteen years, they indicated to the judge that they can arrange for a gang of twenty-five to remove me and my effects from the home after the order of judicial sale. I have previously appealed to my ex-spouse to defer the listing of the property for sale until July 5, 2025. This request was not dignified with a response.

This shelter has been my primary residence for the past fifteen years (21% of my life) for my ex-spouse, this home is a virtual ATM. The same laws that allows her to have financial equity by virtue of "marriage" also facilitates for me to seek any and all forms of disgorgements that empowered and enabled her to perpetrate irreparable harm to me. From her visa application at the Embassy of the United States to her procurement of United States Citizenship to withdrawal from a circuit court mandated Alternative Dispute Resolution only to seek alimony, the Defendant's objective has been to monetize her stay in the United States.

I am taking this action to protect myself; because I do not know what the next action will be if I am unable to pay the spousal support. The Defendant brought me down ; but I will go down fighting with all and every legal means that I have at my disposal. The Plaintiff elected not to remain anonymous because of the vested standing the Plaintiff has in this matter.

## PRELIMINARY STATEMENT

On June 9, 1997, Defendant arrived in the United States at the JFK International airport via an Air Afrique flight emanating from Abidjan, Ivory Coast Defendant presented a Liberian passport no. OR/16867/93 bearing a United States B-2 visa.

## JURISDICTION AND VENUE

1. This action is under 8 U.S.C. § 1451 (a) to revoke and set aside the order admitting the Defendant to United States citizenship and to cancel the said Certificate of Naturalization.

2. This court has subject-matter jurisdiction pursuant to 8 U.S.C. § 1451(a) and 28 U.S.C. §1 345.

3. The court has personal jurisdiction over the Defendant because the Defendant can be found in and resides in this District pursuant to U.S. Constitution Article III §2, cl. I.

4. Venue is proper in this District pursuant to U.S.C. § 1451(a) and 28 U.S.C. §1 1391 because the Defendant resides in Montgomery County, Maryland, U.S.A.

## II

## PARTIES

1. The Plaintiff is Kortue C. Sammy, Sr. initially suing on behalf of himself; however subsequent tot this filing, the Plaintiff will invite the United States of America through the Immigration and Customs Enforcement as Plaintiff/Litigant. The United States Citizenship and Immigration Service has appropriate standing in this complaint.

2. The Defendant is a "naturalized" citizen of the United States of America residing

3

at 14212 Weeping Willow Dr Apt.#11 Silver Spring, MD 20906 DOB: March 17, 1964, Prior A# 073 622 997

## III

## FACTUAL BACKGROUND

Based on sworn affidavit of Kortue C. Sammy, Sr. resident of Montgomery County, Maryland showing good cause for this action as required by 8 U.S.C. § 1451(a), is attached hereto as Exhibit (#1)

## IV

## IMMIGRATION HISTORY

On June 9, 1997, Defendant arrived in the United States at the JFK International Airport aboard an Air Afrique flight emanating from Abidjan, Ivory Coast Defendant presented a Liberian passport no. OR016867/93 bearing a United States B-2 visa. (**Exhibit # 1**

The Defendant and I had a relationship prior to my relocating to the United States. Defendant cajoled and convinced me to help her get a visiting visa to see me. My daughter graduated from Colonel West High School in Dayton, Ohio. Based on my request, my daughter's mother agreed to send her an invitation and confirmed the invitation to the United States Embassy in Monrovia, Liberia. Defendant was fortunately granted the visa. When the Defendant was at risk of overstaying her visiting visa because the Defendant got pregnant, my younger sister, who lives in New York, referred us to a paralegal/immigration expediter (now deceased). It was arranged for the Defendant to see this gentleman.  My

4

sister paid for the service, as since I had just arrived in the country and could not afford the required $750.00 fee the paralegal was charging.

## MARGARET WILLIAMS APPLIES FOR POLITICAL ASYLUM

During this process, the Defendant fabricated all the information about her identity, events, and background. Defendant created a fake character, Harry Williams as her father to match her last name. Her late father was Henry V. Freeman, Sr. (deceased June 28, 2021) When the Defendant applied for the visiting visa in Monrovia, Liberia, the Defendant applied as married to Tonieh E. Williams. Every statement and assertion on the political asylum application was willfully mis-represented, inaccurate and false. This constitutes asylum fraud. At the apex of the Liberian Civil war, The United States Government was thankfully incredibly supportive of those who were lucky to flee the country. The INS then granted asylum to many who were honest in telling their story. The Defendant's story was one that fell through the cracks. The immigration officer did not compare the information on her political asylum application with the visa application in Monrovia, Liberia. **(Exhibit # 3)**

## MARGARET WILLIAMS APPLIES FOR DEPENDENT UNDER I-730

Based on the approved asylum application, The Defendant again submitted a fraudulent I-730 for her son, Ebeneezer Williams, Jr. to come to the United States. I consented to this proposal because it was the right thing to do, he already had two siblings here. The name of her son corroborates with the name of her first husband. **Exhibit # 3**

The I-730 was approved and Ebeneezer Williams, Jr. arrived in the United States on March 19, 2000.

The denaturalization of a dependent can potentially occur if their parent obtained immigration. status or citizenship through fraud or misrepresentation. This can include revoking the dependent's derivative status or citizenship if it was obtained based on the fraudulent actions of the parent.

## MARGARET WILLIAMS APPLIES FOR CHANGE OF STATUS TO PERMENANT RESIDENCE

Margaret was eligible to apply for the adjustment of her immigration status from asylee to Permanent Resident on or after November 17,1998. However, the cloud of the wilful representation on her asylum application haunted her for all these years, being rightfully afraid that discovery of her wilful concealment and misrepresentations would lead to her removal from the country. Margaret finally applied for adjustment of status in 2016, which was granted November 10, 2016. Eighteen years after eligibility.!

### NATURALIZATION INTERVIEW

Kortue Sammy and Margaret Williams-Sammy have been functionally separated since March 19, 2018, and physically separated since July 5, 2020. Her plan was to file for a divorce after the adjustment of her immigration status. As seen here on September 13, 2021, Defendant had been using the access had to the house to collect the information that the Defendant wanted to complete her N-400. The Defendant move out on July 5, 2020. I have nothing to do with this adjustment of status, as we have been functionally divorced since March 19, 2018. Any assertion about me or my marital status may be inaccurate or fraudulent.

In order to obtain information from my immigration file, the Defendant attempted forced entry into the marital home she vacated on July 5, 2020 **(Exhibit # 4)**

6

## V

## GOVERNING LAW

### Congressionally Imposed Prerequisites to the Acquisition of Citizenship
### The Denaturalization Statute

The INA is codified in Title 8 of the United States Code. Citations to federal immigration statues may take the form of direct citations to the U.S. Code.

1. Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant his or her naturalization application, Congress enacted 8 U.S.C. § 1451.

2. Under 8 U.S.C. § 1451 (a), this Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if his or her naturalization was Illegally procured or Procured by concealment of a material fact or by willful misrepresentation.

3. under 18 U.S.C. § 1546(a), it is unlawful to possess an immigration document known to have been obtained through false statements, even if the document itself is genuine.

**Lack of Statute of Limitations:**

Unlike criminal offenses where there are typically time limits for prosecution, there's no statute of limitations for initiating denaturalization proceedings based on grounds of misrepresentation and concealment of material evidence.

The lack of a statute of limitations can mean that denaturalization proceedings can be initiated decades after a person's conduct, even if the conduct occurred long ago.

The responsibility for creating a limitations period in immigration law rests with Congress, not the judiciary.

**Continuing Offenses:**

Immigration offenses are considered "continuing" offenses, meaning the statute of limitations doesn't start running until the offense ceases, or the authorities seize the evidence.

Where the government establishes that the Defendant's citizenship was procured illegally or by willful misrepresentation of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Id.* at 517.

## CAUSES OF ACTION

### COUNT I

**ILLEGAL PROCUREMENT NATURALIZATION LACK OF GOOD MORAL CHARACTER (FALSE TESTIMONY)**

The Plaintiff and United States re-allege and incorporates by reference paragraphs 1 through 6 of this Complaint:

1) As discussed above, to be eligible for naturalization an applicant must show that Defendant has been a person of good moral character for the five-year statutory period before he files his N-400, and until the time the Defendant becomes a naturalized United States citizen. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(l).

8

2) An applicant for naturalization is statutorily precluded from establishing the good moral character necessary to naturalize if the Defendant has given false testimony for the purpose of obtaining an immigration benefit. *See B* U.S.C. §l 101(f)(6).

3) Defendant provided false testimony for the purpose of obtaining every immigration benefit when the Defendant was interviewed under oath in connection with her application for political asylum, change of status and the N-400

4) Defendant gave false or misleading information to U.S. **immigration** officers concerning her identity on multiple occasions while seeking multiple immigration benefits; Defendant lied about her identity to procure entry and admission into the United States.

5) Defendant knew her testimony to be false.

6) Because Defendant provided false testimony for the purpose of obtaining an immigration benefit during the statutory period, the Defendant lacked the good moral character necessary to be eligible to naturalize.

### COUNT II

**ILLEGAL PROCUREMENT OF NATURALIZATION, NOT LAWFULLY ADMITTED FOR POLITICAL ASYLUM, PERMENANT RESIDENT. PROCURED BY FRAUD AND/OR WILFULREPRESENTATION**

The Plaintiff and United States re-allege and incorporates by reference.

paragraphs 1 through 13 of this Complaint:

9

1) To qualify for naturalization, an applicant must have been lawfully admitted to the United States for permanent residence and subsequently resided in this country for at least five years prior io the date of application. *See 8* U.S.C. § 1427(a)(1); *see also* 8 U.S.C. §l

2) Based on the fraudulent procurement of political asylum, permanent residency by willfully providing false and misleading information, the Defendant can not have been lawfully admitted.

3) The term "lawfully" requires compliance with the substantive legal requirements for admission, and not *mere* procedural regularity.

4) Any foreign persons who, by fraud or willfully misrepresenting a material fact, seeks to

procure (or has sought to procure, or has procured) a visa, other documentation, or admission into the United States or other immigration benefit is inadmissible.  8 U.S.C. § 1182(a)(6)(C)(i).

5) Based on the aforementioned fraudulent application and wilful misstatements, The Defendant could not have been and was never lawfully admitted as a permanent resident and cannot satisfy the requirements of 8 U.S.C. § 1427(a)(1) and 8 **U.S.C.** § 1429, because the Defendant was inadmissible at the time of her admission as a **lawful** permanent resident.

6) At the time Defendant was application for asylum was approved, the Defendant fabricated, among other things, false parents, false marital status. Had the Defendant provided true information concerning her true

10

identity, the Defendant would have been found inadmissible and ineligible for asylum status.

7) Under 8 IJ.S.C. § 1451(a), this Court must revoke a naturalized person's citizenship and cancel her Certificate of Naturalization if that person procured her naturalization by concealment of a material fact or by willful misrepresentation.

8) As set forth above, Defendant concealed and willfully misrepresented on her Form N-400 and at her subsequent interview the Defendant was asked following: whether defendant had ever given false testimony or information to a obtain any benefits. The Internal Revenue Service and Maryland DLLR determined that the Defendant attempted to perpetrate tax fraud and administrative malfeasance by filing Head of Household while married and filing for unemployment benefits while running an unregistered home business.

9) Additionally, Defendant misrepresented and concealed her true identity including her given name, and the true marital status.

10) Because Defendant was inadmissible at the time, the Defendant adjustment of her status to that of a lawful permanent resident, the substantive legal requirements to obtain that status was never met.

11) Due to successive fraudulent applications, the Defendant was never lawfully admitted for permanent residence, the Defendant was and remains ineligible for naturalization under 8 U.S.C. §§ 1427(a)(1),

11

1429 & 1430.

12) Defendant knew that her willful misrepresentations and omissions about these matters were false and misleading. The Defendant's willful misrepresentations and omissions were material to determining her eligibility for asylum, permanent residency and naturalization. Defendant's false statements and testimony had the natural tendency to influence a decision by USCIS to approve her application for asylum, adjustment of residency and finally the N-400. Indeed, but for Defendant's concealment of material facts and willful misrepresentations, her statutory ineligibility for asylum, adjustment of residency and finally naturalization would have been disclosed, and USCIS would not have approved her respective applications. And indeed, administered the oath of allegiance.

13) Defendant thus procured her naturalization by willful misrepresentation and concealment of material facts. **This Court must therefore revoke his citizenship pursuant to the requirements of 8 U.S.C. § 1451(a).**

## COUNT III

### ILLEGAL PROCUREMENT OF UNITED STATES CITIZENSHIP BY CONCEALMENT OF MATERIAL FACTS

The Plaintiff and United States re-allege and incorporates by reference paragraphs 1 through 8 of this Complaint.

12

1. Under 8 IJ.S.C. § 1451(a), this Court must revoke a naturalized person's citizenship and cancel her Certificate of Naturalization if that person, the Defendant procured her naturalization by concealment of a material fact or by willful misrepresentation.

2. As set forth above, Defendant concealed and willfully misrepresented on her Form N-400 and at her subsequent interview the following: while the Defendant has never been convicted by law enforcement officer or the IRS and Maryland DLLR, it was determined that The Defendant attempted to perpetrate tax fraud and administrative malfeasance. The Defendant has refunded or is still refunding the IRS.

3. Additionally, Defendant misrepresented and concealed *her* true identity including her given name at birth and, and the true marital status.

4. Defendant knew that her willful misrepresentations and omissions about these matters were false and misleading.

5. Defendant's willful misrepresentations and omissions were material to determining her eligibility for asylum, permanent residency and naturalization. Defendant's false statements and testimony had the natural tendency to influence a decision by USCIS to approve her various application for asylum, adjustment of residency and finally the N-400.

6. Indeed, but for Defendant's concealment of material facts and willful misrepresentations, her statutory ineligibility for asylum, adjustment of residency and finally naturalization would have been disclosed, and USCIS

13

would not have approved her respective applications. And indeed, administered the oath of allegiance.

7. Defendant thus procured her naturalization by willful misrepresentation and concealment of material facts. This Court must therefore revoke his citizenship pursuant to the requirements of 8 U.S.C. § 1451(a).

8. Defendant thus procured her naturalization by willful misrepresentation and concealment of material facts. This Court must therefore revoke her citizenship pursuant to the requirements of 8 U.S.C. § 1451(a).

## LACK OF GOOD MORAL CHARACTER

1) Starting in 2015, The Defendant refused to file joint income tax returns as married filing jointly as we have done since 1999. This action has presented a hardship for me as my tax bracket, married filing separately has become unaffordable.

2) Based on the action above the Defendant followed a group of tax evaders to an unscrupulous tax preparer notorious for instituting inflated tax refunds. The Defendant willfully filed as "head of household" in 2015 and received a federal tax refund of over **$9,000** for Tax year 2015. With three children, we never received a refund at such a level. The act was so unconscionable that the IRS flagged her tax return. Defendant or is paying back the unjust enrichment.

14

3) In 2016, Margaret was relieved of her position at the ARC of Montgomery County, Maryland for negligence of not exercising the required duty of care for mentally challenged patients in a group home.

4) The Defendant decided to again perpetrate another fraud against the Maryland Department of Labor, Licensing and Regulations by filing for unemployment benefits.

The DLLR denied the Defendant's claim when it was established that Defendant had an unregistered home business evidenced by her bank deposits.

By 2003, I realized that the Defendant was **NOT** divorced from her first husband as the Defendant claimed to me. Margaret was in fact engaged bigamy. Still married to Tonieh Williams in Liberia and Kortue Sammy in Maryland, USA.

Defendant sent to Liberia and was able to process and obtain a back-dated bill of divorcement to reflect that the dissolution of the that marriage occurred on June 20, 1997- (Exhibit 2)

The Defendant arrived in the United States on June 9, 1997, eleven days after her arrival in the United States as evidence of the I-94 **(Exhibit 1)** We both are originally from Liberia; due to the rampant and institutionalized corruption; The Plaintiff could fly to Liberia and fly back with my own **death certificate.**

## V

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Kortue C. Sammy and the United States of America, respectfully request:

1) A declaration that the Defendant procured his citizenship illegally.

15

2) A declaration that the Defendant procured his citizenship by concealment of material facts and by willful misrepresentation.

3) Judgment revoking and setting aside the order admitting Defendant to citizenship and canceling Certificate of Naturalization effective as of the original date of the order and certificate.

**4)** Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages under any document which evidences United States citizenship obtained as a result of the Defendant's **naturalization.**

5) Judgment requiring the Defendant to immediately surrender and deliver any other indicia of U.S. citizenship, including, but not limited to, United States passports, voter registration cards, and other voting documents, as well as any copies thereof in her possession or control (and to make good faith efforts to recover and then surrender any copies thereof that she knows are in the possession or control of others),

6) Judgment granting the Plaintiff and United States any other relief that may be lawful and proper in this case.

7) Judgment granting the Plaintiff fifty percent of the Plaintiff's tax obligation caused by the Defendant's filing as "head of household" without the any disclosure to the Plaintiff.

Dated: March 7, 2025,          Respectfully Submitted;

                               Kortue C. Sammy, Pro Se


**Exhibits**